UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:14-cv-00050-FDW

| | |
|---|---|
| JOHN L. FAY, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Amended Motion for Summary Judgment (Doc. No. 19) and "Memorandum in Support…" (Doc. No. 20); Defendant Commissioner's Motion for Summary Judgment (Doc. No. 22) and "Memorandum in Support…" (Doc. No. 23); and Plaintiff's "Reply to Response" (Doc. No. 24). The Parties initially filed motions for summary judgment and this Court *sua sponte* directed supplemental briefing in light of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015).[1]

Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set for below, Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Motion for Summary Judgment is GRANTED.

**I.  BACKGROUND**

On November 5, 2012, Plaintiff filed an application for a period of disability and disability

---

[1] The mandate was issued on May 11, 2015, after Plaintiff's motion for summary judgment was filed.

1

insurance benefits. Plaintiff alleged disability starting on January 31, 2010. On May 23, 2014, after a hearing before the Administrative Law Judge (ALJ), Plaintiff's claim was denied. On October 3, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ decision after granting an extension for Plaintiff's counsel to submit additional information. Subsequently, Plaintiff filed the pending action.

## II. DISCUSSION

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion;" "[i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). District courts do not review a final decision of the Secretary *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456. Thus, if this Court finds that the Commissioner applied the correct legal standards and that his

decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

Thus, the issue before this Court is whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III. ANALYSIS

The question before the ALJ was whether Plaintiff was "disabled" under the Social Security Act.[2] Plaintiff has the burden of proving he was disabled within the meaning of the Act in order to be entitled to benefits. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The Social Security Administration ("SSA") uses a five step sequential evaluation process, pursuant to 20 C.F.R. § 404.1520, for determining disability claims. If a claimant is found to be disabled or not disabled at any step, the inquiry ends and the adjudicator does not proceed further in the process. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment or a combination of impairments that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering their RFC and vocational

---

[2] "Disability" is defined under the Social Security Act, 42 U.S.C. § 301, et. seq., as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

factors (age, education, and work experience). If the claimant is able to adjust to other work, considering their RFC and vocational factors, a claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).

The claimant bears the burden of production and proof during the first four steps of the inquiry. Pass, 65 F.3d at 1203. If a claimant is able to carry this burden through the fourth step, the burden shifts to the Commissioner in the fifth step to show that other work is available in the national economy that the claimant could perform. Id.

In this case, on November 5, 2012, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 31, 2010. The claim was denied initially on February 5, 2013, and upon reconsideration on April 17, 2013. Thereafter, Plaintiff filed a written request for hearing on June 5, 2013 (20 CFR 404.929 *et seq.*). On March 20, 2014, the ALJ held a video hearing (20 CFR 404.936(c)). Plaintiff appeared in Franklin, NC, and the ALJ presided over the hearing from Greenville, SC. Mark Leaptrot, an impartial vocational expert, also appeared at the hearing. Plaintiff was represented by Russell R. Bowling, an attorney.

Following the above hearing, the ALJ determined that Plaintiff had not been engaged in substantial gainful activity since his alleged onset date of January 31, 2010, through the date of the ALJ's decision. (Tr. 19). At step two, he determined that Plaintiff had severe impairments of "obstructive sleep apnea, cervical degenerative disc disease, lumbar degenerative disc disease status post fusion, right shoulder tendonitis, restless leg syndrome, depression and PTSD (20 CFR 404.1520(c)." Id. At step three, the ALJ found that Plaintiff's condition did not meet any of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23). At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a). (Tr. 26).

4

Plaintiff's possible work is limited to "lifting and carrying 10 pounds occasionally and 5 pounds frequently." Id. Plaintiff was also limited to standing and/or walking for up to 2 hours in an 8-hour workday. Id. He was further found to be able to sit for up to 6 hours in an 8-hour workday. Id. The ALJ determined that Plaintiff could perform these tasks with normal allowable breaks. Id. Plaintiff was limited to never climbing ladders, ropes, or scaffolds. Id. He was also only allowed to occasionally climb ramps or stairs, stoop, crouch, or kneel. Id. Plaintiff was limited to never being able to crawl. Id. Plaintiff was further limited to occasional right forward reaching or overhead reaching. Id. Plaintiff was limited to avoiding concentrated use of moving machinery or concentrated exposure to unprotected heights. Id. Furthermore, Plaintiff was "limited to simple, routine, repetitive tasks with no fast-paced production requirements." Id. Finally, Plaintiff was limited to "only simple work-related decisions with few changes and no public interaction and only occasional interaction with coworkers. Id. The ALJ stated that Plaintiff was unable to perform any past relevant work under 20 CFR 404.1565. (Tr. 30). The ALJ also found that Plaintiff was a younger individual based on 20 C.F.R. 404.1563, had a high school education, and had the ability to communicate in English. Id. Here, the ALJ found that transferability of Plaintiff's job skills was irrelevant because the ALJ found Plaintiff "not disabled." Id. At step five, the ALJ, based on testimony of the vocational expert ("VE"), concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant can perform" such as weaver defect clerk, egg processor, and charge account clerk. (Tr. 30-31).

     On appeal to this Court, Plaintiff presents the following assignments of error: (1) The hypothetical question to the vocational expert was incomplete because the ALJ failed to account for his own determination of moderate limitations in concentration, persistence, and pace; (2) the RFC is

5

unsupported by substantial evidence because the ALJ accorded inadequate weight to the opinion rendered by Dr. Lawrence; (3) the credibility determination is unsupported by substantial evidence; and (4) the Step 5 determination is unsupported by substantial evidence. (Doc. No. 20, p. 8).

**A. Assessment of the Effects of Plaintiff's Ability to Stay on Task**

When the ALJ finds moderate limitation in concentration, persistence, or pace they must properly consider these limitations in the RFC. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). These limitations are not accounted for by restricting the Plaintiff to "simple, routine tasks or unskilled work." Id. An ALJ can exclude concentration, persistence, or pace from hypothetical questions asked to the vocational expert, but they must properly explain why a moderate limitation in these areas does not translate into a limitation in the claimant's RFC. Id.

Here the ALJ did limit Plaintiff to "simple, routine, repetitive tasks with no fast-paced production requirements" as a result of his difficulties concentrating. (Tr. 28). As was noted above, these limitations alone are not enough to account for moderate limitation in concentration, persistence, or pace. Id. However, the ALJ provided substantial evidence to indicate that these moderate limitations did not translate into limitation in the claimant's RFC.

The ALJ recognized that Plaintiff had a "history of PTSD and depression with some fluctuations in his improvement." (Tr. 29). However, the ALJ also noted that Plaintiff had no psychiatric hospitalizations; there were multiple reports of his conditions being either level or controlled; and Plaintiff was able to attend college classes. Id. The ALJ recognized that Plaintiff reported difficulty attending his college classes, but also noted that Plaintiff later reported his mood as stable and that records indicated Plaintiff had a "normal appearing affect and a normal memory." Id. ALJ considered instances of worsening symptoms, but he continued to find later reports that his depression was in remission and his PTSD was adequately controlled. Id. The ALJ also noted

that Plaintiff had "no significant impairment in his ability to remember work-like procedures or understand, remember or carry out short and simple instructions. (Tr. 29-30). Finally, the ALJ observed that Plaintiff had "only moderate impairments in understanding, remembering and carrying out detailed instructions." (Tr. 30).

The Court will not reweigh evidence presented to the ALJ, but will only determine whether the ALJ used substantial evidence to adequately support their decision. Lester, 683 F.2d at 841. Here, the Court finds that the evidence cited above constitutes substantial evidence to support the ALJ's decision not to include impairments in concentration, persistence, or pace in his RFC limitations.

### B. Treating Physician's Opinion

Generally, the ALJ gives controlling weight to the treating physician's opinion. 20 C.F.R. § 416.927(c)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; see also Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (noting that Craig had been superseded by 20 C.F.R. § 416.927(c)(2), but recognizing that this interpretation of when a physician's opinion should not be given controlling weight is consistent with the statute). The weight accorded to a physician's opinion is based on its consistency with evidence in the record. 20 C.F.R. § 416.927(c)(4). However, if the treating physician's opinion is not given controlling weight then the ALJ must provide good reason for not doing so. 20 C.F.R. § 416.927(c)(2).

Here, the ALJ gave little weight to the treating physician's opinion because he determined that "[Dr. Lawrence's] findings are inconsistent with the treatment record (including [Dr. Lawrence's] own notation that the claimant's PTSD is adequately controlled and depression is in

remission)." (Tr. 30). The ALJ previously indicated that Dr. Lawrence had observed fluctuations in Plaintiff's psychological state, but had noted that as recent as November 27, 2013, that Plaintiff's "PTSD, [is] adequately controlled, and depression [is] in remission." (Tr. 29). The ALJ also considered mental health notes such as one that found "claimant reported good energy level with college classes scheduled for the summer." Id. The ALJ also considered treatment notes indicating that Plaintiff was well groomed, casually dressed, sleeping well, and making good eye contact. Id. The ALJ determined that these treatment notes and objective observations were in conflict with the more restrictive limitations proposed in Dr. Lawrence's opinion. (Tr. 30). Thus, the Court finds that the ALJ's decision to give Dr. Lawrence's more restrictive opinion little weight is supported by substantial evidence. Id.

The ALJ also attributed some weight to two, non-treating, State agency psychological consultants because their opinions were "more consistent with the weight of the objective medical evidence." Id. The Social Security regulations recognize, "State agency medical and psychological consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." These regulations go on to state, "[t]herefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." Id. The clear language of the regulations allows an ALJ to attribute weight to a State agency psychological consultant.

In this instance the ALJ attributes only some weight to the State agency psychological consultants for the proper reason that their opinions are more aligned with the objective medical evidence. Id. The evidence to support this decision was the treating physician's objective

8

treatment notes and other objective findings (such as Plaintiff's attendance of college classes, Plaintiff's appearance when evaluated by his treating physician, and Plaintiff's reports of improvement). (Tr. 29). The Court finds that this evidence, presented in the ALJ's decision, substantially supports his decision to give some weight to the State agency psychological consultants.

For these reasons the Court finds that there is substantial evidence to support giving little weight to the treating physician's opinion while giving some weight to the State agency psychological consultants' opinions.

## C. Credibility Determination

As was previously noted in the Court's decision, in reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456. The ALJ is thus able to make credibility determinations so long as they are supported by substantial evidence.

The ALJ did not find Plaintiff's testimony concerning the extent of his limitations credible because they were inconsistent with the record. (Tr. 27). In making this determination the ALJ first considered the psychological evidence previously stated in this opinion, as well as Plaintiff's ability to drive, count change, interact on social media, care for his children, and help his father re-floor his parent's home. (Tr. 27). ALJ also considered treatment received by Plaintiff and noted disability findings by Veteran Affairs. (Tr. 27-28). The ALJ noted the inconsistency that Plaintiff claimed to be unable to count change, but Plaintiff was able to attend college level courses and Plaintiff's ex-wife's Function Report indicated that he was able to count change. (Tr. 27). The

9

ALJ also noted the inconsistency that Plaintiff claimed to use a cane, but was never prescribed a cane by a treating physician and has no recorded evidence of cane use. Id. The Court finds that the evidence provided in the treatment record and the inconsistencies between Plaintiff's testimony and the objective record constitute substantial evidence to find Plaintiff's testimony concerning the extent of his limitations not credible.

Plaintiff also contends that Plaintiff's mother's testimony was not properly considered. However, Plaintiff's mother's testimony was not doubted, but rather it was found to be similar to Plaintiff's own testimony. Id. The ALJ determined that Plaintiff's mother's testimony is similar to Plaintiff's own testimony found in the ALJ's decision. (Doc. No. 20, 19); (Tr. 26-27). All differences in Plaintiff's mother's testimony and Plaintiff's testimony were accounted for in the RFC. All similarities in these testimonies that were found not credible by the ALJ were properly found to be not credible for the reasons discussed above. Thus, the Court finds that the ALJ properly accounted for Plaintiff's mother's statements in his determination of Plaintiff's RFC limitations. (Tr. 27).

For these reasons the Court finds that the ALJ properly found Plaintiff's testimony concerning the extent of his limitations not credible, and the Court finds that Plaintiff's mother's testimony was properly considered by the ALJ.

**D. Step 5 Analysis**

Plaintiff's only objections to the ALJ's step 5 analysis derive from his previous claim that the ALJ improperly excluded concentration, persistence, or pace when determining Plaintiff's RFC and the claim that Dr. Lawrence's opinion should have been given controlling weight. (Doc. No. 20, 20). However, the Court has previously addressed both of these issues, and it similarly finds that the ALJ's step 5 analysis was correct for the reasons previously stated.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Amended Motion for Summary Judgment is DENIED (Doc. No. 19), and Defendant Commissioner's Motion for Summary Judgment is GRANTED (Doc. No. 22).

**IT IS SO ORDERED.**

Signed: July 29, 2016

Frank D. Whitney
Chief United States District Judge